IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAL IRVIN & SUZANNE IRVIN,
individuals,

No. 3:17-cv-01751-SI

Plaintiffs,

ORDER

v.

HSBC BANK USA, N.A., a New York
Corporation; WELLS FARGO BANK, N.A.,
a California Corporation; and QUALITY
LOAN SERVICE CORPORATION OF
WASHINGTON, a Washington Corporation,

Defendants.

HERNÁNDEZ, District Judge:

Plaintiffs Michal Irvin and Suzanne Irvin bring this action against Defendants HSBC

Bank USA, Wells Fargo Bank, and Quality Loan Service Corporation of Washington

("Quality"), alleging breach of contract, violation of 12 C.F.R. § 1024.36, intentional

interference with economic relationship, violation of the Oregon Unfair Trade Practices Act, and

breach of the covenant of good faith and fair dealing. Compl. 1, ECF 1. Plaintiffs also seek a

declaratory judgment regarding the rights of Defendants to foreclose on Plaintiffs' home. Compl. ¶ 36. In conjunction with their Complaint, Plaintiffs filed a Motion for a Temporary Restraining Order ("TRO") to restrain Defendants from conducting a foreclosure sale of Plaintiff's home currently scheduled for November 9, 2017. Mot. TRO, ECF 2.

Plaintiffs' motion largely revolves around an alleged unlawful assignment of the beneficial interest under the Deed of Trust associated with their home loan. Mot. TRO ¶¶ 1–10. Plaintiffs allege that they entered into a thirty-year loan with Hyperion Capital Group, LLC, in November 2006 to purchase their home, the property located at what is commonly known as 9160 SW 161st Ave., Beaverton, Oregon 97007. Compl. ¶¶ 1, 11. Plaintiffs claim that they defaulted on their loan in July 2013 while trying to qualify for a loan modification through Defendant Wells Fargo Bank. Compl. ¶ 12. Years later, around July 7, 2017, Defendant Quality provided Plaintiffs with a Trustee's Notice of Sale. Compl. ¶ 29; Ex. 2.

Plaintiffs allege that Defendant Quality "has no authority, power, standing or otherwise to initiate a non-judicial foreclosure." Mot. TRO ¶ 4. They allege that the assignment purportedly giving Defendant Quality the power to enforce the Deed of Trust is the result of an unlawful assignment of both the Note and Deed of Trust by Mortgage Electronic Registration System (MERS) to Defendant HBSC Bank on August 11, 2011. Compl. ¶ 14; Ex. 3. Plaintiffs claim, therefore, that Defendant Quality is not the "duly appointed trustee of the deed of trust" and cannot pursue a non-judicial foreclosure. Mot. TRO ¶ 4. To prevent Defendant Quality from conducting the wrongful foreclosure sale, Plaintiffs bring this claim. Compl. ¶ 3.

## STANDARDS

Under Rule 65(b), a TRO may issue without notice to the opposing party or its attorney only if the movant shows (1) through "specific facts in an affidavit or a verified complaint" that

"immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition[,]" and (2) that "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

The standard for a temporary restraining order (TRO) is "essentially identical" to the standard for a preliminary injunction. *Chandler v. Williams*, No. CV 08-962-ST, 2010 WL 3394675, at *1 (D. Or. Aug. 26, 2010) (citing *Stuhlbarg Int'l Sales Co, v. John D. Brushy & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001)); *see also Daritech, Inc. v. Ward*, No. CV–11-570–BR, 2011 WL 2150137, at * 1 (D. Or. May 26, 2011) (applying preliminary injunction standard to motion for TRO). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns Inc. v. City of L. A.*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 21 (2008)). "The elements of [this] test are balanced, so that a stronger showing of one element may offset a weaker showing of another. For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir.2011).

## DISCUSSION

Here, Plaintiffs have met both requirements of Rule 65(b). First, as required by Rule 65(b)(2), Plaintiffs' counsel certified in writing his efforts to give notice to Defendants. Jeffrey Long Decl. at 2, ECF 2. Second, Plaintiffs demonstrate they are likely to suffer significant irreparable harm from the imminent sale of their home. This Court has repeatedly held that the

loss of a home may result in irreparable harm. *See Dawson v. Bank of New York Mellon*, 3:16-cv-01427-HZ, 2016 WL 3592438, at * 1 (D. Or. July 18, 2016) (finding non-judicial foreclosure would cause irreparable harm from the loss of the plaintiff's real property); *Gosha v. Bank of New York Mellon Corp.*, 3:16-CV-00073-BR, 2016 WL 9211686, at *1 (D. Or. Jan. 25, 2016) (granting a TRO where it was a close question on the merits but the potential harm to plaintiffs— who were senior citizens on a fixed income—was great); *Barnett v. BAC Home Loan Servicing, L.P.*, 772 F.Supp.2d 1328, 1338 (D. Or. Feb. 23, 2011) (finding the scheduled foreclosure sale would likely cause irreparable harm).  Plaintiffs have lived in their home for 11 years. Compl. ¶ 2. They have retrofitted and customized this home to adapt to the needs of their special needs children. Compl. ¶ 3. The loss of this property, therefore, would likely cause substantial, irreparable harm to Plaintiffs.  Because this sale is scheduled for November 9, 2017, this harm may result before Defendants can be heard on this matter.

As to the merits of Plaintiffs' claims, it is not clear from the pleadings whether Plaintiffs will succeed. However, the severity of the harm that Plaintiffs would face with the loss of their home offsets their lesser showing of this element of the *Winter* test. *See Cottrell*, 632 F.3d at 1131; *Gosha*, 2016 WL 9211686, at *1. The harm that Plaintiffs face also outweighs any potential harm to Defendants from postponing the foreclosure sale.

Finally, the public interest factor in this case is neutral. "When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the preliminary injunction analysis." *Stormans v. Selecky*, 586 F.3d 1109, 1138-39 (9th Cir. 2009).  But, if the impact of the injunction reaches beyond the parties and potentially impacts the public, the public interest is relevant to the analysis. *Id.* Here, this

factor is not relevant to the analysis: Plaintiffs' request is limited to restraining Defendants from conducting the foreclosure sale and does not involve any non-parties to the action.

Finally, a TRO may issue only if the movant "gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court has discretion as to the amount of security, if any, that should be required. *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009). While Plaintiffs fail to address the security issue at all, the Court orders Plaintiffs to pay a security in the amount of $4,000 to offset costs sustained by Defendants in the event they have been wrongfully restrained.

## CONCLUSION

Plaintiffs' motion for a temporary restraining order [2] is granted. This order will expire within 14 days of its issuance. Plaintiffs' are further ordered to pay a security in the amount of $4,000 by November 7, 2017.

IT IS SO ORDERED.

Dated this _____3_____ day of ___November___, 2017

_____
MARCO A. HERNÁNDEZ
United States District Judge